## TEXAS DEPARTMENT OF HEALTH, Intervenor, Appellant.

v.

## Martha BUCKNER and Adolphus Sneed, as Parents and Next Friends of Iesha Buckner, a Minor, Appellees.

### No. 2–96–281–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 14, 1997.

Dan Morales, Attorney General, Jorge Vega, First Assistant Attorney General, Laquita A. Hamilton, Deputy Attorney General, for Litigation, Nelly R. Herrera, Chief, Tort Litigation Division, Danica L. Milios, Assistant Attorney General Tort Litigation Division, Austin, for appellant.

Robert J. Talaska and Jacqulyn C Gregan, Haskins Law Firm, Houston, for appellees.

Before DAY, BRIGHAM and HOLMAN, JJ.

## OPINION

DAY, Justice.

Appellant, the Texas Department of Health (TDH), appeals the trial court's striking of its petition in intervention in a lawsuit between appellees Martha Buckner and Adolphus Sneed, individually and as parents and next friends of Iesha Buckner (Buckners), Dr. Sumant A. Kumar, Dr. Stanley D. Abrams, and Parker County Hospital Authority, d/b/a Campbell Memorial Hospital (defendants). The TDH raises a single point of error, arguing that the trial court abused its discretion by denying its petition in intervention. We agree and reverse and remand

this case to the trial court for proceedings consistent with this opinion.

## BACKGROUND

The Buckners sued the defendants, alleging negligence and medical malpractice that caused injury to Iesha Buckner. Through the federal Medicaid program, the TDH paid the medical expenses resulting from the alleged negligence and medical malpractice. The TDH filed a petition in intervention, seeking reimbursement for its payment of these expenses. On the Buckners' motion, the trial court struck the TDH's petition in intervention.

The Buckners and the defendants then filed an agreed final judgment settling the lawsuit. The trial court ordered the settlement proceeds paid into a "Supplemental Care Trust."

## STANDARD OF REVIEW

■ The standard of review for determining whether a trial court properly struck a petition in intervention is abuse of discretion. *See Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990). To determine whether a trial court abused its discretion, we must decide "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). Under an abuse of discretion standard, legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion. *See Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex.1991); *D.R. v. J.A.R.*, 894 S.W.2d 91, 95 (Tex.App.—Fort Worth 1995, writ denied) (op. on reh'g); *In re Driver*, 895 S.W.2d 875, 877 (Tex.App.—Texarkana 1995, no writ); *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, no writ). Merely because a trial judge may decide a matter within its discretion in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion occurred. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,*

476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Kirkpatrick v. Memorial Hosp. of Garland,* 862 S.W.2d 762, 776 (Tex.App.—Dallas 1993, writ denied). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *See Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

## ANALYSIS

■ Texas Rule of Civil Procedure 60 provides that a party may intervene in a lawsuit, but the court may strike the petition for sufficient cause on any party's motion. Tex.R. Civ. P. 60. It is an abuse of the trial court's discretion to strike a petition in intervention if the intervenor: (1) could have brought the same action, or any part of it, in its own name; (2) the intervention would not complicate the case by excessively multiplying the issues; and (3) the intervention is necessary to properly protect the intervenor's interests. *See Guaranty Bank,* 793 S.W.2d at 657.

Title XIX of the Social Security Act established the federal Medicaid program. *See* 42 U.S.C.A. §§ 1395–1396v (West 1992 & Supp. 1997). A state that chooses to participate in the program must agree to follow Title XIX and the Health Care Finance Administration's (HCFA)[1] regulations. *See id.* §§ 1396–1396v; 42 C.F.R. 430.0–.25 (1996). Accordingly, each participating state must submit a plan for medical assistance to the HCFA that includes Title XIX's requirements. *See id.*

Two elements that a state plan must include are provisions that require a recipient, as a condition for eligibility, to: (1) "assign the State any rights, of the individual or of any other person who is eligible for medical assistance ... and on whose behalf the individual has the legal authority to execute an

---

1. The HCFA is the federal agency that administers the Medicaid program.

assignment of such rights, to support . . . and to payment for medical care from any third party"; and (2) "cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan." 42 U.S.C.A. § 1396k(a)(1)(A), (C).

Section 32.033 of the Texas Human Resources Code is the Texas statute created to comply with these requirements. It provides that "[t]he filing of an application for or receipt of medical assistance constitutes an assignment of the applicant's or recipient's right of recovery from: (1) personal insurance; (2) other sources; or (3) another person for personal injury caused by the other person's negligence or wrong." TEX. HUM. RES.CODE ANN. § 32.033(a) (Vernon 1990). Accordingly, when a recipient applies for or receives Medicaid, the recipient's entire cause of action, up to the amount paid by the TDH for medical care services, is assigned to the State. Moreover, section 32.033 provides: "A separate and distinct cause of action in favor of the state is hereby created, and the department may, without written consent, take direct civil action in any court of competent jurisdiction." *Id.* § 32.033(d). Thus, without further consent, the TDH may take direct civil action in any court to recover sums spent on a Medicaid recipient's behalf. *See id.*

The regulations associated with section 32.033's provision for recovery of expended Medicaid funds from third parties include the following provision:

> Reimbursement from third-party resources for medical care services paid on behalf of a Texas Medical Assistance (Medicaid) Program recipient is assigned to [the TDH] or its health insuring agent under Human Resources Code, § 32.033. Third-party resources include, but are not limited to, the following:
>
> . . . .
>
> (9) any claim filed on behalf of or payment made to a Medicaid recipient for injuries requiring Medicaid services including payments for mental anguish, pain and suffering, and future medical expenses when the injury causing the need for Med-

icaid services was the basis for those claims or payments.

25 TEX. ADMIN. CODE § 28.101(a)(9) (1997) (Tex. Dep't of Health, Third Party Resources).

Accordingly, in the present case, once the Buckners received Medicaid assistance for Iesha's medical treatment, any cause of action or right of recovery arising from her injury, up to the amount the TDH expended for her care, was assigned to the TDH as a matter of law.

Thus, an application of the *Guaranty Bank* test shows that the trial court abused its discretion when it struck the TDH's petition in intervention. *Guaranty Bank*, 793 S.W.2d at 657. The TDH could have, in its own name, brought the Buckners' causes of action against the defendants without any permission or consent. *See* TEX. HUM. RES.CODE ANN. § 32.033(d) (Vernon 1990). Moreover, the TDH's intervention would not have complicated the case by excessively multiplying the issues. The parties had reached a settlement agreement and were proceeding with a settlement prove-up hearing. The TDH's intervention would only have affected whether part of the funds were disbursed to the TDH and part to the trust or whether all of the funds were disbursed to the trust. Finally, the TDH's intervention was necessary to protect its interest in recovering expended Medicaid funds. The trial court ordered the net proceeds paid into the trust. It further ordered that an amount equal to the sum expended by the TDH be maintained in liquid assets until its claim is resolved. However, as a nonparty to the suit, the TDH would lack standing to enforce the court's order, and it is the only "party" with the incentive to insure that the trust maintain an amount sufficient to cover its expenditures.

Accordingly, we hold the trial court abused its discretion by striking the TDH's petition in intervention and sustain the TDH's point of error. We reverse the trial court's judgment and remand this case for proceedings in accordance with this opinion.