COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-262-CV

 

 

IN THE MATTER OF V.B.                                                                      

 

                                                    

                                                                                                        

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In one issue, Appellant V.B.
complains that the trial court abused its discretion in modifying his
disposition and committing him to the Texas Youth Commission (TYC).  Because we hold that the trial court did not
abuse its discretion, we affirm the trial court=s modification judgment and commitment order.

 








                                    PROCEDURAL HISTORY

On November 17, 2005,
Appellant, a juvenile,[2]
was adjudged to have engaged in delinquent conduct by committing the offense of
assault on a public servant (a felony) and was placed on probation.  On July 12, 2006, the State filed a motion to
modify Appellant=s
disposition alleging that he had violated the terms and conditions of his
probation by committing the offense of assault with bodily injury (a Class A
misdemeanor) on March 5, 2006.  At the
hearing on the State=s motion to
modify, Appellant stipulated to evidence establishing that he violated the
terms of his probation by assaulting a police officer.

The trial court=s judgment recites that Appellant violated the terms and conditions of
his probation, that it is in Appellant=s best interest that his probation be revoked, and that Appellant=s best interest would be served by committing him to TYC for an
indeterminate period of time not to exceed the date when he turns twenty-one
years old.

                              THE COMPLAINED-OF
FINDINGS 








In his sole point, Appellant
contends the trial court abused its discretion by committing him to TYC because
there is factually insufficient evidence to support the court=s commitment findings that reasonable efforts were made to prevent or
eliminate Appellant=s removal
from the home and to make it possible for him to return home; and that he
cannot be provided the quality of care and level of support and supervision in
his home that he needs to meet the conditions of probation.

Section 54.05 of the Juvenile
Justice Code sets out procedures that must be followed by the trial court in a
hearing to modify the disposition in a juvenile case.  Tex.
Fam. Code Ann. ' 54.05
(Vernon Supp. 2006).  The portions
relevant to Appellant=s issue on
appeal provide:

(m)  If the court . . . commits the child to the
Texas Youth Commission, the court:

 

(1)  shall
include in the court=s
order a determination that:

. . .   

(B) 
reasonable efforts were made to prevent or eliminate the need for the
child=s
removal from the child=s
home and to make it possible for the child to return home; and

 

(C) the child, in the child=s
home, cannot be provided the quality of care and level of support and
supervision that the child needs to meet the conditions of probation. 

 

Id. 
The trial court=s commitment order made findings that complied with section
54.05(m)(1)(B) and (C).

 

 

 








                                    STANDARD OF REVIEW

After a juvenile has been
adjudicated delinquent, the court has broad discretion to determine
disposition.  In re C.J.H., 79
S.W.3d 698, 702 (Tex. App.CFort Worth 2002, no pet.).  The
trial court=s judgment
and commitment order modifying Appellant=s disposition are reviewed under an abuse-of-discretion standard.  In re J.P., 136 S.W.3d 629, 632 (Tex.
2004).  To determine whether a trial
court abused its discretion, we must decide whether the trial court acted
without reference to any guiding rules or principles; in other words, we must
decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159
(1986).  Merely because a trial court may
decide a matter within its discretion in a different manner than an appellate
court would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Id.








An abuse of discretion does
not occur where the trial court bases its decisions on conflicting
evidence.  In re Barber, 982
S.W.2d 364, 365 (Tex. 1998) (orig. proceeding). 
Furthermore, an abuse of discretion does not occur as long as some
evidence of substantive and probative character exists to support the trial
court=s decision.  Butnaru v. Ford
Motor Co., 84 S.W.3d 198, 211 (Tex. 2002). 
Whether there is factually sufficient evidence to support the trial
court=s findings is a relevant consideration in determining if the trial
court abused its discretion.  See
Beaumont Bank v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Tex. Dep=t of Health v. Buckner, 950 S.W.2d
216, 218 (Tex. App.CFort Worth
1997, no writ).  An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the finding should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).

                                   FACTUAL BACKGROUND








Appellant acknowledges that
he was appearing before the trial court for the third time, having previously
been adjudicated delinquent for criminal mischief, resisting arrest, and
assault on a public servant.  He has been
in foster care off and on since he was eight months old due to physical abuse
by his mother.[3]  He has resided in a group foster home with
Jesse Henry and his wife for several years with six or seven other foster
children, including the Henrys= baby.  Prior to his arrest for
the instant offense, Appellant was attending an alternative school.

On March 5, 2006, Henry
called the police requesting assistance because Henry was trying to subdue
Appellant and keep him from hitting some of the other foster children in Henry=s care.  When Officer G.G.
Hemstead arrived at the scene, she found a Chevy Suburban belonging to Henry
parked on the side of the road.  The
officer approached the vehicle and observed Henry lying on top of Appellant
trying to restrain Appellant from fighting with the other foster children.  Officer Hemstead was wearing her Fort Worth
Police Department uniform and badge and entered the vehicle to assist in the
restraint.  The officer yelled at
Appellant and told him to stop fighting. 
Appellant looked at the officer and kicked her in her left temple
region, causing pain and swelling. 
Appellant subsequently pled guilty to a reduced charge of misdemeanor
assault/bodily injury arising out of the incident.













During the disposition phase
of the hearing, the court admitted without objection a social history report
completed by Appellant=s juvenile
probation officer, Wade Sinor.  In the
report, Sinor explained that Appellant was appearing before the court for the
third time and that the matter presently before the court involved Appellant=s fifth delinquent referral to the probation department. The report
indicates that according to Appellant=s foster parents, Athere have been rough times in the home due to [Appellant=s] non-compliance.@  After the incident involving
Appellant=s assault of
Officer Hemstead, Sinor visited Appellant at Henry=s home.  At that time, Appellant
became verbally abusive toward Henry and Sinor, stating AF*** Mr. Sinor and F*** probation.@ Sinor testified at the hearing
that this was the third time Appellant had assaulted a peace officer.  Appellant has previously received weekly
court-ordered counseling to deal with his anger issues.  In November 2005, Appellant was ordered to be
assessed for possible placement in a more intensive type of probation therapy,
but following Appellant=s assault of
Officer Hemstead in March 2006, the juvenile probation department determined
that more restrictive supervision was required. 
Sinor opined that Appellant Aprobably needs more of a residential treatment center, something more
restrictive rather than, I don=t think he=s getting
what he needs in the foster care.  I don=t think Mr. Henry can supervise him and give him the attention he
needs.  I think he needs something a
little more restrictive.@  Sinor testified that Appellant had a
part-time job in the evenings.  Appellant=s psychological assessment report indicates that Appellant has anger
management problems or behavioral problems. 
Appellant was verbally abusive at home and had some fights with the
other foster children in the home.  Henry
informed Sinor that Appellant had been going to weekly counseling through Child
Protective Services (CPS), where he received his medication, Zoloft.  When asked by Appellant=s counsel whether he believed that if Appellant was given the
opportunity to participate with the Family Partnership Program it would be
appropriate for or benefit him, Sinor responded that Appellant probably needs
something more restrictive than he was receiving in the foster home, more like
a residential treatment center.  He
stated that Resource Staffing recommended that Appellant be placed in a
residential treatment center, and if that wasn=t available through CPS, then Resource Staffing=s recommendation was that Appellant be placed with TYC.

Appellant=s CPS caseworker Mr. Milton testified that it would be Avery difficult@ to find a
residential treatment center for Appellant due to his ageCat the time of the hearing Appellant was seventeen and a half years
oldCand the fact that this is his third assault and Appellant would likely
have to travel to Tyler, Houston, or Austin and would be far away from his CPS
caseworker.  Milton stated that Aif there was a facility that I thought would do [Appellant] better
justice, I would recommend it and try to place him there.  I=m just doubtful, though, with the third offense that they could.@








Appellant testified that the
first couple of times that he was taken to the juvenile detention facility, he Areally didn=t take
things seriously,@ but after
he was taken to the Tarrant County jail he changed his attitude.  Since being released, he has been trying to
go to church on Sunday and he said that he=s going to stay away from the group of people he hung around with that
got him in all this trouble.

                                           DISCUSSION

The record reflects that CPS
and the juvenile probation department have provided Appellant with regular
psychological counseling and supervised foster care, and despite those efforts
Appellant assaulted a uniformed police officer in March 2006, causing bodily
injury to the officer.  Appellant=s foster parents acknowledged that the situation in their home was
made more difficult due to Appellant=s noncompliance.  Appellant=s juvenile probation officer testified that in his opinion Appellant
requires a more restricted setting than can be provided in foster care.  After a comprehensive evaluation, Residential
Staffing recommended that Appellant be placed in a residential treatment
center, but if that was unavailable, then Appellant should be placed in
TYC.  The CPS caseworker testified that
placement in a residential treatment center would be very difficult due to
Appellant=s age and
history of repeated assaults.








The evidence establishes that
reasonable efforts were made to prevent or eliminate the need for Appellant=s removal from the home and to make it possible for him to return
home, and that he cannot be provided the quality of care and level of support
and supervision in his home that he needs to meet the conditions of
probation.  Considering all the evidence
from the hearing, we hold that the evidence supporting the two complained-of
findings is not so weak, and the evidence to the contrary is not so
overwhelming, that the findings should be set aside.  Accordingly, we conclude that the trial court
did not abuse its discretion in committing Appellant to TYC.  We overrule Appellant=s sole issue on appeal.

                                           CONCLUSION

Having overruled Appellant=s sole issue, we affirm the trial court=s modification judgment and the commitment order. 

 

PER CURIAM

PANEL F: 
HOLMAN, WALKER, and MCCOY, JJ

DELIVERED: 
January 11, 2007

 

 











[1]See Tex.
R. App. P. 47.4.





[2]Appellant
was born on January 6, 1989.





[3]His biological mother=s rights have previously been
terminated.